UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
No. 12-74184

EL COMITE PARA EL BIENESTAR DE EARLIMART, ASSOCIATION
OF IRRITATED RESIDENTS, WISHTOYO FOUNDATION, and
VENTURA COASTKEEPER,

Petitioners

vs.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.

Respondents

**PETITION FOR REVIEW OF A FINAL ACTION OF THE UNITED
STATES ENVIRONMENTAL PROTECTION AGENCY**

***AMICUS CURIAE* BRIEF OF THE AIR COALITION TEAM AND
SUPPORTING RESPONDENTS UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY, et al.**

Rissa A. Stuart, #166459
Ann M. Grottveit, #256349
Katherine E. Underwood, #249308
Kahn, Soares & Conway, LLP
1415 L Street, Suite 400
Sacramento, CA 95814
Telephone: (916) 448-3826
Facsimile: (916) 448-3850
Attorneys for Air Coalition Team
*Amicus Curiae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 28(a)(1) and 26.1, Federal Rules of Appellate Procedure, Air Collation Team ("ACT") states as follows: (1) ACT does not have any parent companies, and (2) there are no publicly-owned companies that have a 10% or greater ownership in ACT.

ACT is an unincorporated association/coalition formed to promote and protect the interests of agriculture and related business and industries in the development and implementation of legislation, regulations, and rules related to air quality issues in California and, more specifically, in the San Joaquin Valley ("SJV"). ACT is comprised of members and representatives from the California Cotton Ginners and Growers Associations; California Grape and Tree Fruit League; California Rice Commission; California Strawberry Commission; the County Farm Bureaus for Kings, Fresno, Madera, Tulare, Kern, Merced and Stanislaus Counties; California Citrus Mutual; Nisei Farmers League; Western Plant Health Association; and J.G. Boswell Company.

i

**STATEMENT (FRAP Rule 29(c)(5))**

This *amicus* brief was not authored in whole or in part by any party's counsel; a party or a party's counsel did not contribute money that was intended to fund preparation and submission of the brief; and no person, other than the *amicus* and the *amicus'* counsel, contributed money that was intended to fund preparation and submission of the brief. Rule 29(c)(5), Fed. R. App. Proc.

# TABLE OF CONTENTS

Page

I.    INTRODUCTION.................................................................................1

II.   IDENTITY AND INTEREST OF AMICUS CURIAE.......................2

      A.   Source of Authority and Statement of Consent ...........................3

III.  STATEMENT OF FACTS ...................................................................4

      A.   Introduction .................................................................................4

      B.   *El Comite, et al. v. Warmerdam, et al.* .........................................7

            1.   2008 VOC Regulation .........................................................7

            2.   Ninth Circuit Opinion..........................................................8

      C.   Ventura County SIP Reduction.....................................................9

      D.   Fumigant Regulations...................................................................9

            1.   State Court Challenge..........................................................9

            2.   Submission to EPA.............................................................10

      E.   SIP Revision for the SJV.............................................................11

IV.   ARGUMENT ....................................................................................12

      A.   EPA'S Interpretation of the Pesticide Element is Reasonable and
           the SIP Revision is Enforceable ................................................12

1. The Boyd/Howekamp Letter Does Not Support El Comite's Theory that the SIP Requires a Reduction in the SJV of 20 percent.................................................................14

2. EPA's Interpretation of the 1994 Pesticide Element is Reasonable.......................................................16

3. EPA's Reliance on the Final Rule is Reasonable...............18

B. The SIP Revision Does Not "Weaken" the California Pesticide Element.....................................................................18

C. The Fumigant Regulations and the Emission Cap for the SJV Satisfy the Original SIP Commitment........................................19

D. California's Commitment to Adopt Restrictions on Non-Fumigants Also Satisfies the Pesticide Element. ..........................................20

E. EPA's Approval of the SIP Revisions Satisfies the Remand in *Association of Irritated Residents, et al. vs. EPA* .......................22

F. California Provided All Necessary Assurances to EPA to Satisfy the Clean Air Act.......................................................................23

V. CONCLUSION................................................................................25

# <u>TABLE OF AUTHORITIES</u>

Page

**<u>Federal Case Law</u>**

*Association of Irritated Residents, et al. v. EPA,*
　686 F.3d 668 (9th Cir. 2012) .............................................................22, 23

*Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,*
　66 F.3d 692, 698 (9th Cir. 2004) .............................................................13

*Christensen v. Harris County,* 529 U.S. 576, 588 .......................................13

*El Comite Para el Bienestar de Earlimart, et al. v. Helliker, et al.,*
　416 F.Supp.2d 912 (E.D. Cal. 2006) ................................................1, 4, 7

*El Comite Para el Bienestar de Earlimart, et al. v. Warmerdam, et al.,*
　539 F.3d 1062 (9th Cir. 2008) ...................................1, 3, 8, 13, 14, 19, 20

*NRDC v. EPA*, 478 F2d 875, 890 (1st Cir. 1973)........................................25

*Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1100 (9th Cir. 2007) ..........13


**<u>Statutes</u>**

Fed. R. App. Proc., Rule 29(a) ...................................................................3
42 U.S.C. §§ 7401-7671q ..........................................................................4
42 U.S.C. § 7410(c)(1)..............................................................................23
42 U.S.C. § 7410(l)................................................................................18, 19
42 U.S.C. § 7509.......................................................................................23


**<u>Federal Regulations</u>**

40 C.F.R. § 52.220......................................................................................6
40 C.F.R. § 52.220(c)(204)(i)(A)(6).......................................................6, 13
40 C.F.R. § 52.220(c)(236)(i)(l) .............................................................6, 13

**State Regulations**

C.C.R. § 6452.2 ................................................................8, 9
C.C.R. § 6558................................................................22
C.C.R. § 6577................................................................22
C.C.R. § 6880................................................................22
C.C.R. § 6881................................................................22
C.C.R. § 6883................................................................22
C.C.R. § 6884................................................................22
C.C.R. § 6886................................................................22

**Other Authorities**

62 Fed. Reg. 1150 (Jan. 8, 1997)..........................................6, 18
73 Fed. Reg. 41277 ........................................................9
73 Fed. Reg. 41278 ........................................................9
77 Fed. Reg. 65294 (Oct. 26, 2012) .......................................11
*A Guide to Pesticide Regulation, California Department of Pesticide
Regulation,* http://www.cdpr.ca.gov/doc/pressrls/dprguide/htm...........24-25
*Initial Statement of Reasons, California Department of Regulation,*
http://www.cdpr.ca.gov/docs/legbills/rulepkgs/12-001/statement.pdf.......22

## I.  INTRODUCTION

Petitioners El Comite Para El Bienestar De Earlimar, Association of Irritated Residents, Wishtoyo Foundation and Ventura Coastkeeper ("El Comite") bring this action to challenge the United States Environmental Protection Agency's ("EPA") final action approving regulations promulgated by the California Department of Pesticide Regulation ("DPR") and approving the emission cap for the San Joaquin Valley ("SIP Revision"), which established a fixed 18.1 tons per day limit of pesticide volatile organic compound ("VOC) emissions in the San Joaquin Valley.

El Comite began this legal odyssey almost a decade ago when they initiated litigation in the United States District Court in the matter of *El Comite Para el Bienestar de Earlimart, et al. v. Helliker, et al.*, 416 F.Supp.2d 912 (E.D. Cal. 2006) asserting DPR had violated the 1994 Pesticide Element by failing to promulgate regulations.  This Court rejected El Comite's claims on appeal (*see El Comite Para el Bienestar de Earlimart, et al. v. Warmerdam, et al.*, 539 F.3d 1062 (9th Cir. 2008) ("*Warmerdam")*), as did the Sacramento County Superior Court when El Comite challenged the above referenced regulations in state court in 2009.

This action represents a third attempt to challenge the 12 percent reduction commitment contained within the SIP Revision, which as

discussed below, is consistent with the 1994 Pesticide Element. It is readily apparent El Comite's petition relies on theories already rejected by this Court and the Air Coalition Team files this Amicus Brief in support of EPA, joining their request that this Court deny El Comite's petition.

## II. IDENTITY AND INTEREST OF AMICUS CURIAE

The Air Coalition Team ("ACT") is an unincorporated association/coalition formed to promote and protect the interests of agriculture and related business and industries in the development and implementation of legislation, regulations, and rules related to air quality issues in California and, more specifically, in the San Joaquin Valley ("SJV").

ACT's members are manufacturers, distributors, and growers who use pesticides subject to the Fumigant Regulations and proposed nonfumigant regulations referenced in the SIP Revision. ACT's members are also subject to the emission cap for the SJV. ACT and its members have a proprietary interest in their farming operations and use of pesticides while retaining an interest in improving air quality in the SJV and throughout California. If El Comite is successful in its challenges to the SIP Revision, ACT and its members will be detrimentally impacted from an economic standpoint.

This case raises issues of vital concern to the membership of ACT. ACT members who are growers, manufacturers, and distributors use pesticides to prevent disease, infestation, and other harmful invasions that would otherwise threaten food, water, energy, and other resources on which amici and the public depend.

ACT's interests are aligned with EPA and adverse to El Comite. ACT was Appellant/Intervenor in *El Comite Para el Bienestar de Earlimart, et al. v. Warmerdam, et al.,* 539 F. 3d 1062 (9th Cir. 2008), and its members were active in the rule making process for the Fumigant Regulations approved by EPA on October 26, 2012, as part of the SIP Revision. ACT and its members have also been actively involved in the rule making process for the nonfumigant regulations California committed to promulgate by 2014 in the SIP Revision. In addition, ACT intervened in Petitioners' state court challenge to the Fumigant Regulation on CEQA grounds.

### A.     Source of Authority and Statement of Consent

ACT is authorized to file this *Amicus* brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 29-2(a).

ACT has communicated with the parties involved in this litigation and has received confirmation from EPA that it consents to the filing of this

*Amicus* brief.  ACT has received confirmation from El Comite that it does not object to the filing of this *Amicus* brief.

## III.  STATEMENT OF FACTS

### A.    Introduction

The federal Clean Air Act ("CAA"), 42 U.S.C. §§ 7401-7671q, requires each state submit a State Implementation Plan ("SIP") for achieving and maintaining federal ambient air quality standards for ozone.  An ozone nonattainment area ("NAA") is a geographical region in California that does not meet either federal or state ambient air quality standards. ER 3:577.  In the case of the Pesticide Element, because volatile organic compounds ("VOCs") react with oxides of nitrogen ("NOX") in the presence of heat and sunlight to form ozone, the state must monitor the VOCs emitted by each pesticidal product to determine the inventory, or the catalog of emission sources.  *El Comite Para el Bienestar de Earlimart, et al. v. Helliker, et al.*, 416 F.Supp.2d 912, 917 (E.D. Cal. 2006).

In 1994, California's Air Resources Board ("ARB") and DPR developed a plan to reduce pesticidal sources of VOCs in five NAAs – Sacramento Metro, San Joaquin Valley, South Coast, Southeast Desert, and Ventura –as part of the California SIP ("Pesticide Element") to meet the one-hour ozone standard.  ("1994 Ozone SIP".)  ER 1:106-116.

On May 11, 1995, in response to concern expressed by EPA that the Pesticide Element lacked specific emission reduction goals as specified by date and non-attainment area, Mr. Boyd (then Executive Officer of ARB) sent a letter to EPA intended to clarify and revise certain aspects of the Pesticide Element. ER 1:125-146. Enclosed with this letter was a memorandum from then DPR Director James Wells to Mr. Boyd ("Wells Memorandum") which reflected a commitment by California to adopt and submit by June 15, 1997, any "regulations necessary to reduce volatile organic compound emissions from agricultural and commercial structural pesticides by specific percentages of the 1990 base year…" in the five nonattainment areas as described in the enclosed table. *Id.* at 126-127. The table referenced set forth interim VOC emission reduction levels for the five NAAs. ER 2:126.

On March 18, 1996, EPA proposed to approve California's 1994 Ozone SIP, which, at the time, included the Wells Memorandum. ER 1:49, 2:147-149. California submitted comments to EPA clarifying the Pesticide Element did not intend to establish interim-year emission reduction commitments, but rather only sought to obtain credit for pesticide VOC reductions in each of the five NAAs attainment year and that EPA's actions "should reflect this information." ER 1:50.

On June 13, 1996, prior to EPA approving the 1994 Ozone SIP, Mr.
Boyd sent a letter to Mr. Howekamp at EPA, Region IX ("Boyd/Howekamp
Letter") setting forth corrections to the Pesticide Element.  ER 2:160-171.
One of the corrections Mr. Boyd requested was for EPA to remove the table
from the Wells Memorandum that set out interim reductions over several
years.

On January 8, 1997, EPA finalized approval of the 1994 Ozone SIP,
including the Pesticide Element, and codified it at 40 C.F.R. § 52.220 (62
Fed. Reg. 1150 (Jan. 8, 1997).).  The approved Ozone SIP stated California
"has committed to adopt and submit to U.S. EPA by June 15, 1997, any
regulations *necessary* to reduce VOC emissions from agricultural and
commercial structural pesticides by 20 percent of the 1990 base year
emissions in the attainment years for Sacramento, Ventura, Southeast Desert
and the South Coast, and *by 12 percent in 1999 for the San Joaquin Valley*."
*Id.,* 40 C.F.R. §§ 52.220(c)(204)(i)(A)(*6*), 52.220(c)(236)(i)(*1*); ER 2:172-
178, 176.  The final rule included a list of all documents from the 1994
Ozone SIP that became part of the final SIP, including the 1994 Pesticide
Element and the Boyd/Howekamp Letter.  The Wells Memorandum was not
included as part of the final SIP.

6

### B.   *El Comite, et al. v. Warmerdam, et al.*

In 2004, El Comite and others joined together to file a citizens suit under section 304 of the CAA against DPR in the United States District Court for the Eastern District of California in order to enforce the Pesticide Element.  ACT intervened in this action.  In 2006, the District Court ordered DPR to adopt and implement regulations by January 26, 2008, to achieve a 20 percent reduction of pesticide VOC emissions from 1991 levels in the five NAAs as set forth in Wells Memorandum.  *El Comite Para el Bienestar de Earlimart v. Helliker*, 416 F. Supp. 2d 912 (E.D. Cal. 2006).  Believing the District Court was in error, DPR and ACT immediately appealed the District Court's decision.

### 1.  2008 VOC Regulations

While DPR's and ACT's appeal was pending before this Court, the District Court directed, and DPR reluctantly promulgated regulations ("2008 VOC Regulations"), adopted January 25, 2008.  The 2008 VOC Regulations required the Director of DPR to establish field fumigant VOC emission limits for NAAs that exceed 80 percent of the emissions benchmarks to make sure those benchmarks are not exceeded.  The benchmarks were based on each NAA's emissions in 1991, and set 20 percent below that level.  The public comments submitted during this administrative process were lengthy.

7

They included comments from numerous agricultural commodity groups, including members of ACT and recited the significant impacts of these regulations to agriculture, including job loss, lost income, loss of land, and the related environmental effects which would result therefrom.

### 2. Ninth Circuit Opinion

After promulgation of the 2008 VOC Regulations, this Court vacated the District Court's order to achieve a 20 percent reduction from 1991 emissions in the five NAAs. In doing so, this Court found the Wells Memorandum was not included in the Pesticide Element. *El Comite Para El Bienestar de Earlimart, et al. v. Warmerdam, et al.,* 539 F.3d 1062 (9th Cir. 2008). Because the Wells Memorandum was not part of the SIP, the interim schedule and standards contained therein were irrelevant and this Court held California had not violated the SIP by electing not to submit regulations by June 15, 1997. *Id*. at 1069-1070.

The 2008 VOC Regulations[1] were only promulgated to comply with the erroneous and now vacated District Court order in *Warmerdam*.

---

[1] California Code of Regulations section 6452.2 set the benchmarks for total VOC emissions for all five NAAs (fumigant and nonfumigant) 20 percent below 1991 levels.

## C. Ventura County SIP Reduction

On July 18, 2008, the EPA approved California's SIP revision which reduced the amount of VOC emission reductions required from pesticides in Ventura in 2008 by 1.3 tons per day. 73 Fed. Reg. 41277, 41278.

On September 3, 2008, DPR amended California Code of Regulations section 6452.2 to make it consistent with the phase-in of 1.3 tons per day in Ventura approved by EPA.

## D. Fumigant Regulations

On April 20, 2009, and in response to this Court's decision in *Warmerdam*, DPR adopted amendments to Fumigant VOC emission limits ("Fumigant Regulations").

### 1. State Court Challenge

On May 20, 2009, El Comite filed an action in the Superior Court of the State of California, County of Sacramento challenging the Fumigant Regulations on points related to the California Environmental Quality Act ("CEQA"). ACT intervened in this action. On December 11, 2009, Judge Michael Kenny denied El Comite's petition challenging these regulations. Judgment was entered December 28, 2010.

9

## 2. Submission to EPA

On October 12, 2009, ARB submitted the Fumigant Regulations to EPA for approval. The Fumigant Regulations provide the following:

- Establish standards for fumigant application and restricts the use of certain higher-emitting application methods in the five nonattainment areas between May 1 and October 31 of each year.

- Provide a contingency mechanism to limit VOC emissions from field fumigation applications in the Ventura County nonattainment area to ensure that the area's overall limit on pesticide VOC emissions limit is not exceeded.

- Establish VOC emission limits and inventory Benchmarks from May 1 to October 31, for the non-attainment areas, including 18.1 tpd for the San Joaquin Valley.

- Require DPR issue an annual emissions inventory report which reports the total agricultural and commercial structural (fumigant and nonfumigant) pesticide VOC emissions for the previous years in each of the five nonattainment areas and evaluates compliance with the emissions reduction limits in each area.

10

- Establishes pesticide use record keeping and reporting requirements necessary to ensure compliance with the other parts of the fumigant regulations.

(ER 1:35–37.)

### E. SIP Revision for the SJV

Also on October 12, 2009, ARB submitted a revised SIP Commitment for the SJV that had been adopted by the Director of DPR on April 17, 2009. As set forth in the Fumigant Regulations discussed above, the SIP Revision for the SJV manages VOC emissions from agricultural and commercial structural pesticide use to ensure they do not exceed 18.1 tons-per-day ("tpd") in the SJV area (which is equivalent to a 12 percent reduction in pesticide VOC emissions from 1990 levels as required by the Pesticide Element.)  The SIP Revision for the SJV also uses the specified emissions estimation methodology to evaluate compliance with the Pesticide Element for the SJV, implements restrictions on agricultural fumigation methods, and by 2014 commits to implement restrictions on VOC emissions of non-fumigant pesticides.  ER 1:35-37.

On October 26, 2012, EPA's Final Rule approving California's revisions to the Pesticide Element was published ("SIP Revision").  77 Fed. Reg. 65294 (Oct. 26, 2012); ER 1:18-29.  The Fumigant Regulations

approved in the SIP Revision were now consistent with the obligation under the 1994 Ozone SIP which required a reduction from the 1990 base year of 20 percent in all NAAs, except for the SJV NAA, where a 12 percent reduction was required.

By way of this Petition, Petitioners seek another opportunity to challenge the SJV NAA commitment under the SIP Revision, which clearly requires a 12 percent reduction. If Petitioners are successful, and this Court vacates the EPA approval of the SIP Revision, it will result in significant disruption to ACT and growers resulting from possible fumigant limits that are unnecessary, potentially eliminating all fumigant use in the SJV. ACT members will be forced to reformulate pesticide products or cease using such products altogether, which may lead to loss of crops or plantings, adversely affecting the property rights of ACT and/or its members.

## IV. ARGUMENT

### A. EPA'S Interpretation of the Pesticide Element is Reasonable and the SIP Revision is Enforceable

El Comite, despite the lengthy litigation history detailed above again seeks a ruling that the Pesticide Element requires a 20 percent reduction in the SJV. Contrary to El Comite's assertion, the Pesticide Element's "plain meaning" does not require a 20 percent reduction of VOC's in the SJV.

12

As this Court recognized in *Warmerdam*, one of the "bedrock" principals of regulatory interpretation is to "look to the plain meaning of the final rule as promulgated." *Warmerdam* at 1071, citing *Bayview Hunters Point Cmty. Advocates v. Metro. Transp. Comm'n,* 66 F.3d 692, 698 (9th Cir. 2004) ("A regulation should be construed to give effect to the natural and plain meaning of its words."). "[T]he plain meaning of a regulation governs and deference to an agency's interpretation of its regulation is warranted *only* when the regulation's language is ambiguous." *Id*. at 1070, citing *Christensen v. Harris County*, 529 U.S. 576, 588. "A court interprets an SIP based on its 'plain meaning when such a meaning is apparent, not absurd, and not contradicted by the manifest intent of EPA, as expressed in the promulgating documents available to the public.'" *Id*. at 1071, citing *Safe Air for Everyone v. EPA*, 488 F.3d 1088, 1100 (9th Cir. 2007).

In deconstructing El Comite's attempt to rewrite the Pesticide Element, this Court should look to the language of the Final Rule as codified by EPA at 40 CFR section 52, the 1994 Pesticide Element as submitted to EPA by California, and the Boyd/Howekamp letter. *Warmerdam* at 1069, 1071; 40 CFR §§ 52.220(c)(204)(i)(A)(*6*), (236)(i)(A)(*1*).

1.  **The Boyd/Howekamp Letter Does Not Support El Comite's Theory that the SIP Requires a Reduction in the SJV of 20 percent.**

El Comite, for a third time, is attempting to assert the California SIP committed to reduce VOC emissions in the SJV by 20 percent, this time by asserting that the plain language of the Boyd/Howekamp letter requires this reduction.

El Comite asserts that it is necessary to read the Boyd/Howekamp letter along with the Wells Memorandum, because the latter provides *context* for the former.  Pet. Br. 46, emphasis added.  El Comite makes this assertion because it seeks, yet again, to maneuver the timetable included in the Wells Memorandum into the Pesticide Element.  El Comite's argument that the timetable is included in the preamble of the "proposed rule" is a tortured attempt to relitigate an argument that this Court has already rejected.  The Boyd/Howekamp letter specifically asked EPA to remove the timetable and the interim measures contained therein from the SIP.  As stated by this Court, at that time "the Howekamp letter became the final word in the saga of the SIP." *Warmerdam* at 1071.

*Warmerdam* specifically found that the Wells Memorandum is not part of the SIP.  *Warmerdam* at 1071.  Therefore, *any* reliance on the Wells Memorandum by El Comite to assist in interpreting the requirements of the

14

California SIP is not only misguided, but is directly contrary to this Court's holding in *Warmerdam*.

While the plain language of Boyd/Howekamp letter, held by *Warmerdam* to be part of the SIP, may appear inconsistent at first glance, further review demonstrates that California committed to reduce pesticide VOC emissions in the SJV by 12 percent. In Attachment A to the Boyd/Howekamp letter, California committed to make reductions from the 1990 Pesticide Emissions Baselines as follows: "a 20% reduction from 1990 levels by 2005 in each SIP area, except SD. We only took credit in the attainment year: SJV 1999 = 12%, SAC 2005 = 20%, Ven 2005 = 20%, SED 2007 = 20%, and SC 2010 = 20%." ER 1:160-171, 164. Read together, the first sentence does appear to commit the SJV to a 20 percent reduction while the second sentence commits the SJV to a 12 percent reduction. However, Attachment C of the Boyd/Howekamp letter[2] commits California to a 13 tpd (rounded up from 12.99 tpd) reduction in the SJV by 1999, which equates to a 12 percent reduction. RER 26.

El Comite relies upon an incomplete single sentence from Attachment A to the Boyd/Howekamp letter where California committed to "a 20% reduction from 1990 levels by 2005 in each SIP area…" as authority for its

_____

[2] The copy of the Boyd/Howekamp letter attached to Petitioner's Excerpts of Record, Volume 1, pages 160 – 171 fails to include Attachment C.

position that California committed to a 20 percent reduction in all five attainment areas, including the SJV. ER 1:160-171, 164. However, this sentence fragment does not stand alone. California goes on to take credit for a 12 percent reduction in the SJV by 1999, which is consistent with Attachment C to the Boyd/Howekamp letter committing to a 12 percent reduction in the SJV by 1999. Accordingly, a full and complete consideration of the Boyd/Howekamp letter demonstrates it does not support a 20 percent reduction in the SJV and cannot be used to assert the SIP Revision is somehow unenforceable.

### 2. EPA's Interpretation of the 1994 Pesticide Element is Reasonable.

The 1994 Pesticide Element and the Boyd/Howekamp letter are included in the final California SIP and when taken together show it was not arbitrary and capricious of EPA to determine California committed to reduce pesticide VOC emissions in the SJV by 12 percent. ACT acknowledges, as EPA does, that the Pesticide Element is ambiguous with respect to California's commitment to reduce VOC emissions from pesticide use in the five nonattainment areas. Specifically, the Pesticide Element is ambiguous as to the percentage reductions and the deadline for achieving the reductions.

The relevant plain language of the Pesticide Element is as follows:

16

"This plan is designed to reduce volatile organic compound (VOC) emissions from agricultural and commercial structural pesticide applications by a maximum of 20 percent from the 1990 baseline emission inventory to the year 2005…The plan offers the flexibility to achieve reductions of less than 20 percent by the year 2005 in air districts if less pesticidal VOC emission reductions are needed." ER 2:106.

The Pesticide Element clearly states California commits to reducing VOC emissions from pesticide use by a *maximum* of 20 percent, relative to baseline levels, and California can elect to reduce by less than 20 percent if it determines a full 20 percent reduction is not needed. When California submitted the Pesticide Element to EPA in 1994, the SJV's deadline to attain the one-hour ozone NAAQS was November 15, 1999. ER 1:50. In order to meet the one-hour ozone standard by the November 15, 1999 deadline, the SJV needed to reduce its pesticide VOC emissions by 13 tpd, which was equivalent to a 12 percent reduction from 1990 baseline levels. ER 1:64.

Additionally, the plain language of the Pesticide Element clearly states the 20 percent reduction is a *maximum* goal, and California can choose a lower percentage reduction if that is what it deems necessary to meet the stated attainment goals. Therefore, despite any ambiguities in the 1994 Pesticide Element and the Boyd/Howekamp letter, when read together, they

17

support the EPA's interpretation of the California SIP. Clearly California committed to a 12 percent VOC reduction in the SJV.

### 3. EPA's Reliance on the Final Rule is Reasonable.

El Comite's argument continues to ignore the language of the Final Rule, as well as the ruling in *Warmerdam*, and attempts to mislead this Court and the public as to the plain meaning of the California SIP.

In the final rule approving the California SIP (which includes the Pesticide Element and the Boyd/Howekamp letter), EPA stated:

> "As described in the SIP, California has committed to adopt and submit to U.S. EPA by June 15, 1997, any regulations necessary to reduce VOC emissions from agricultural and commercial pesticides by 20 percent of the 1990 base year emissions in the attainment years for Sacramento, Ventura, Southeast Desert, and the South Coase, *and by 12 percent in 1999 for the San Joaquin Valley*." (Emphasis added.) ER 1:21; 62 Fed. Reg. 1150, at 1170 (January 8, 1997).

Accordingly, as asserted in EPA's brief, EPA reasonably construed the Pesticide Element to require a 12 percent reduction in the SJV.

### B. The SIP Revision Does Not "Weaken" the California Pesticide Element.

El Comite asserts that the SIP Revision violates 42 USC § 7410(*l*) because residents of the SJV will suffer only a 12 percent reduction of pesticide VOC emissions from 1990 levels while the residents of the other air basins enjoy a 20 percent reduction. Pet. Br. 43, 54. Section 7410(*l*)

asserts each revision to an implementation plan shall not be approved if it "would interfere with any applicable requirement concerning attainment and reasonable further progress".

Section 7410 (*l*) is not implicated because the 18.1 tpd emissions limitation does not "weaken" the SIP, as alleged by El Comite. The SIP Revision's emissions limitation for the SJV manages VOC emissions from agricultural and commercial structural pesticides use to ensure they do not exceed 18.1 tpd, which is equivalent to a 12 percent reduction in pesticide VOC emissions from 1990 levels. ER 1:37. As discussed above, the commitment for the SJV has remained consistent. Therefore, approval by EPA of the SIP Revision for the SJV does not "weaken" the California SIP because it results in the same emissions reductions as would result under the existing, approved, Pesticide Element. ER 1:81-82. Accordingly, the SIP Revision does not impede reasonable further progress.

### C. The Fumigant Regulations and the Emission Cap for the SJV Satisfy the Original SIP Commitment.

El Comite argues the *Warmerdam* ruling precludes the use of compliance monitoring to assess compliance with emission limitations or standards. El Comite claims EPA "attempts to bootstrap the Neal Memorandum into an enforceable component of the SIP Revision." This argument is, yet again, a misinterpretation of *Warmerdam*.

19

In *Warmerdam,* this Court accurately pointed out El Comite was attempting to transform the baseline inventory into an enforceable emission standard or limitation by bootstrapping it to the commitment to *decide to adopt regulations,* if necessary. (Emphasis added.) *Warmerdam* at 1073. The SIP Revision, however, is distinguishable as the Fumigant Regulations are already in place and the commitment was made by DPR to promulgate nonfumigant pesticide regulations.

In order to enforce the SIP, there must be a methodology to determine the actual emissions from pesticides for the SJV. The Neal Memorandum explains that methodology and *along with* the Fumigant Regulations is incorporated into the SIP. In *Warmerdam,* the calculation of the baseline inventory was not linked to the control measure and, as stated by this Court, does not "qualify as an independently enforceable aspect of the SIP." *Id.*

**D.    California's Commitment to Adopt Restrictions on Non-Fumigants Also Satisfies the Pesticide Element.**

El Comite complains DPR has not satisfied the Pesticide Element because "fumigant regulations alone do not assure compliance". Pet. Br. 35-37. Petitioners assert that a large portion of pesticide VOC emissions remain unregulated pointing out that in the SJV and Ventura, non-fumigant pesticides account for roughly 76 and 18 percent of the total pesticide inventory, respectively. *Id.* This argument is without merit as it implies the

Pesticide Element must address and control all sources of pesticide emissions, which is incorrect and ignores the plain language of the SIP Revision. The SIP Revision references DPR's commitment "to manage VOC emissions from the use of agricultural and commercial structural pesticides in the SJV to ensure that they do not exceed 18.1 tons per day and *to implement restrictions on VOC emissions in the SJV from non-fumigant pesticides by 2014*." (Emphasis added.) ER 1:18.

The SIP Revision requires all VOC emissions be reduced by 12 percent (18.1 tpd) but does not specify or require a reduction in every source of pesticide emission. For nonfumigant VOCs, the control requirement within the SIP is to implement restrictions in the SJV by 2014. ER 1:77.

EPA noted in the Technical Support Document ("TSD"), prior to adoption of the SIP Revision, that DPR had already proposed regulations to meet this commitment. ER 1:78. As noted by EPA, the regulations adopted to meet this commitment will need to include appropriate recordkeeping, monitoring and testing requirements.

DPR originally proposed regulatory action in the Initial Statement of Reasons ("ISR") on April 20, 2012, several months before Petitioners filed this action, and set forth the specific purpose and factual basis for the regulations:

21

> "Under the 2009 proposed SIP revision, DPR is obligated to reduce VOC emissions from nonfumigant pesticides. These reductions will be more effective in reducing total pesticide VOC emissions, since nonfumigants make up the majority of pesticide VOC emissions in the San Joaquin Valley ozone NAA." *Initial Statement of Reasons* at http://www.cdpr.ca.gov/docs/legbills/rulepkgs/12-001/statement.pdf.

Beginning November 1, 2013, these regulations go into effect. These regulations reduce VOC emissions from certain nonfumigant pesticide products. Title 3, C.C.R. §§ 6558, 6577, 6880, 6881, 6883, 6884 and 6886. The regulations are designed to keep VOC emissions below a target level from May to October in the SJV. Accordingly, EPA's approval of the SIP Revision, which includes California's commitment to restrict nonfumigant pesticides, is reasonable as these regulations are designed to provide further emission reductions and to specifically address El Comite's concern that non fumigants are "subject to no enforceable commitment". Pet. Br. 40.

### E. EPA's Approval of the SIP Revisions Satisfies the Remand in *Association of Irritated Residents, et al. vs. EPA*.

This Court's ruling in *Association of Irritated Residents* found EPA's action in approving the Pesticide Element of the SIP was arbitrary and capricious. *Id.* at 677. The Court's analysis focuses upon the *Warmerdam* decision and points out, "[A]lthough EPA approved an identical plan in the 1997/1998 SIP, it wasn't until our 2008 *Warmerdam* decision that EPA

approved the plan with the knowledge that the plan may not include enforceable commitments." *Id.* at 678.

As discussed at length in EPA's brief and above, EPA's approval of the SIP Revision for the SJV and Fumigant Regulations provides the control measures and enforceable commitments by way of actual regulations and an emission cap for the SJV. This obviates the need for EPA to revisit the 1997 SIP approval and the 2009 approval of PEST-1 because the SIP Revision meets the CAA's requirements. Indeed, this Court pointed out, "EPA must simply evaluate the existing SIP and if it meets the Act's requirements, EPA can find that the state has 'corrected the deficiency'." *Id.* at 675, citing 42 U.S.C. § 7410(c)(1). Further, this Court found, "any disapproval of a SIP revisions triggers the SIP unless EPA determines the existing Pesticide Element has sufficiently enforceable commitments to meet the Act's requirements. *Id.* at 678, citing 42 U.S.C. §§ 7410 (c)(1), 7509. The remand was required to allow EPA to make this determination and EPA's evaluation and approval of the SIP Revision satisfies the Court's remand.

### F. California Provided All Necessary Assurances to EPA to Satisfy the Clean Air Act.

El Comite asserts "EPA made no effort to consider Title VI and whether California provided necessary assurance of compliance with EPA *proposed* approval of the Fumigant Regulations and the SIP Revision.

(Emphasis added.)  Pet. Br. 56.  EPA clearly addressed Title VI

considerations and, as noted in the Final Rule, requested from California

specific assurances of how DPR's pesticide regulatory program meets its

obligation to comply with sections 601 and 602 of Title VI of the Civil

Rights Act of 1964.  ER 3:574.

DPR regulates pesticides under a comprehensive program that

encompasses not only enforcement of pesticide use in agricultural and urban

environments, but also prevention of environmental contamination,

protection of workers, endangered species protection and community

relations.  While EPA promulgates minimum pesticide requirements,

California's regulations are far more comprehensive.  They include site

specific local permitting by the County Agricultural Commissioners for use

of restricted pesticides; periodic onsite observations by commissioners of

application sites both before and during use; full documentation and

reporting of agricultural pesticide use; post use residue monitoring of treated

commodities; and field worker safety inspections.  These programs have

evolved through legislation, regulation and policy to provide an unparalleled

level of protection for California's citizens and the environment from the

potential harmful effects of pesticide use.  *A Guide to Pesticide Regulation,*

*California Department of Pesticide Regulation, p.45,*

24

*http://www.cdpr.ca.gov/doc/pressrls/dprguide/htm*; ER 3:574-578. DPR

Director Brian Leahy responded to EPA and provided specifics regarding

the comprehensive program referred to above. ER 3:574-586. In doing so,

he referenced numerous regulations and laws that "go beyond or strengthen

the federal label requirements." *Id.* at 575. Congress left to the

Administrator's sound discretion determination of what assurances are

"necessary." *NRDC v. EPA*, 478 F.2d 875, 890 (1st Cir. 1973). The record

clearly demonstrates EPA's determination is a "reasoned judgment that the

necessary assurances requirement has been met". *Id.* at 891.

## V. CONCLUSION

Based upon the foregoing, ACT and its members request El Comite's

petition for review be denied.


DATED: August 26, 2013          KAHN, SOARES & CONWAY, LLP


                      By:   */s Ann M. Grottveit*

                            Rissa A. Stuart

                            Ann M. Grottveit

                            Katherine E. Underwood

                            Attorneys for *Amicus Curiae*

                            Air Coalition Team

## STATEMENT OF RELATED CASES

ACT is not aware of any cases pending in this Court related to this proceeding.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Ninth Circuit Rule 32-1 and Rule 28-4, the attached brief is proportionately spaced, has a typeface of 14 points or more in Times New Roman, and contains 5,018 words, exclusive of those parts of the brief exempted by Rule 32(a)(7)(B)(iii). I have relied on Microsoft Word's calculation feature to calculate the word limit.


Dated: August 26, 2013

*/s Ann M. Grottveit*
Ann M. Grottveit

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 26, 2013.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.


*/s Ann M. Grottveit*
Ann M. Grottveit